# ORPHEUS VAUDEVILLE COMPANY v. .CLAYTON INVESTMENT COMPANY.

No. 2520.   Decided April 13, 1914.   Rehearing denied May 9, 1914
(140 Pac. 653).

1. EVIDENCE—PAROL EVIDENCE—AGREEMENT FOR LEASE—CONSTRUCTION—PROVISIONS AS TO FURNISHING.   Under a contract for the construction and lease of a theater building, providing that defendant should completely equip it in accordance with the architect's specifications to be approved by plaintiff, where neither the contract nor the architect specified what should constitute the equipment, evidence of qualified witnesses that an asbestos curtain, a ticket office, a brass rail for such office, a gridiron, and rigging loft, chairs, and decorations for ceiling and walls were usual and necessary parts of the equipment was admissible.   (Page 460.)

2. CONTRACTS — BUILDINGS — PERFORMANCE — ACT OF ARCHITECT— AGREEMENT FOR LEASE—BUILDING PLANS.   Under a contract whereby defendant was to build and equip and lease a theater building to plaintiff, providing that it should be equipped in accordance with specifications which, in fact, were prepared as the work progressed, the architect's failure to prepare complete specifications of equipment such as fixtures and decorations, which were the last things done in completing the building, did not relieve defendant from his obligation to furnish such items of equipment as were shown to be usual and necessary. (Page 460.)

STRAUP J., dissenting.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Orpheus Vaudeville Company against the Clayton Investment Company.

Judgment for Plaintiff.   Defendant appeals.

AFFIRMED.

See also 41 Utah, 605, 128 Pac. 575.

*Pierce, Critchlow & Barrette* for appellant.

*Gustin, Gillette & Brayton* for respondent.

### STATEMENT OF FACTS.

This is an action for damages for breach of contract. The cause was tried to a jury who returned a verdict for plaintiff, hereafter referred to as Vaudeville Company, in the sum of $4664.48. From the judgment rendered on the verdict, defendant, hereafter referred to as Clayton Company, appeals. The case was before this court on a former appeal. *Orpheus Vaudeville Co. v. Clayton Inv. Co.,* 41 Utah, 605, 128 Pac. 575.

The parties to the action, on April 7, 1905, entered into a contract in writing, which, so far as material here, is as follows:

"The party of the first part (Clayton Company) hereby agrees to completely build, erect, and equip, at the cost of the party of the first part, in accordance with plans and specifications to be prepared by Architect C. M. Neuhausen, at the expense of the party of the first part, which plans and specifications shall first be approved by the party of the second part, a theater building, which shall be erected on that certain piece of land situated in Salt Lake, Utah, and described as follows (describing a piece of land on State Street between First and Second South Streets). . . . The party of the second part shall not have the right to require the expenditure by the party of the first part of more than thirty thousand ($30,000) dollars for the erecting and equipping of said building and entrance; but, in case the said party of the first part shall expend more than thirty thousand ($30,000) dollars in erecting and equipping said building and entrance, the party of the second part shall not, because of said greater expenditure, be required to pay any more rent for the said premises than is above provided, nor

shall the party of the second part be required to pay any portion of said additional expenditure. . . . The party of the first part further agrees that said building and entrance shall be completed and equipped in all particulars in accordance with said plans and specifications on or before the 1st of October, A. D. 1905."

The Clayton Company, at the time the contract was entered into, executed a lease of the premises to the Vaudeville Company. The lease, which is in the usual and customary form of such instruments, provided, among other things, that the Vaudeville Company "shall have and hold" the premises from October 1, 1905, until October 1, 1915. The contract and lease, each of which was in duplicate, were placed, together with an escrow agreement, in a local bank. The Clayton Company deposited its certified check for $10,000 with the contract and lease in escrow. The escrow agreement provided, among other things, that "the said certified check, together with one copy of the said lease, shall be delivered to the party of the first part upon compliance by it, on or before October 10, 1905, with all the terms of the said inclosed contract and plans and specifications, . . . and one copy of said lease shall thereupon be delivered to the party of the second part. If the party of the first part shall fail to comply with all the terms and conditions of said contract on or before the 10th day of October, 1905, the contents of this envelope are to be delivered to the party of the second part on the 1st day of November, 1905."

While the building, according to the contract, was to have been erected and equipped on or before October 1, 1905, owing to the contemplated structure being enlarged, there were several extensions of time granted, and hence it was not turned over to the Vaudeville Company until December 25th. It is alleged in the complaint:

"That, in erecting, building, and equipping said theater building in accordance with said contract, it was necessary and essential, in order that the same could be used for theatrical performances, that the same should be equipped with an asbestos curtain, a ticket office, and brass rail for

same, a gridiron and rigging loft, a manager's office, forty-eight chairs for theater boxes and stalls, and ceiling and wall decorations, all of which defendant at all times knew, . . . but that defendant failed, neglected, and refused to perform said contract on its part to be performed as hereinabove set out." It is further alleged "that, in order to complete the erection and equipment of the said building, and in order to put the building in such condition that it would be a theater building where theatrical performances might be given, and which it became necessary for the plaintiff so to do, and because of the failure of defendant to perform its duties under said contract, . . . the plaintiff, between the 25th day of December, 1905, and the 1st day of February, 1906, was compelled to and did equip the same with an asbestos curtain, ticket office," etc., "at an expense and cost to it of $2013.85, and that on or about the 1st day of July, 1906, it expended in wall decorations the further sum of $2000." It is also alleged in the complaint that: "Because of the delay in erecting said building, the said lease, by interlineation, was changed so as to provide that the term should begin January 1, 1906, and continue for a period of ten years from that date; that said lease so changed was by defendant herein offered to the plaintiff herein; that . . . the plaintiff protested and objected to the defendant, and did accept said lease under protest, . . . not waiving any of its rights under said agreement; . . . that on and prior to the 25th day of December, 1905, this plaintiff was under a large forfeit amounting to $2500 to third parties in the event that it failed to open the theater for a theatrical performance on the night of December 25, 1905; . . . that on or about said 25th day of December, 1905, and upon being notified by defendant that said building was fully completed and ready for occupancy, plaintiff, because and on account of said forfeiture to third parties, and in order to avoid the same, took possession of the same from defendant under protest, and after objecting to the same as aforesaid."

Defendant in its answer, among other things, alleged:

"That on or about the 25th day of December, 1905, plaintiff and the said defendant, by mutual consent, abrogated and rescinded any and all contracts theretofore existing between them respecting the erection, equipment, or adornment of the theater building mentioned; . . . that said action was taken by and between the parties hereto for and in consideration of the execution and delivery of the defendant to the plaintiff of a lease of the said building in the condition in which the same at that date was, and the said lease was then and there accepted by the plaintiff from the defendant, and the said plaintiff did then and there, in consideration of the rescission and abrogation of all contracts theretofore existing, and in consideration of the execution of said lease, enter into the possession and enjoyment of said building under the lease thereby granted; . . . that thereby all negotiations, contracts, agreements, and obligations theretofore pending between the parties were terminated and by express agreement held for naught, and all expenditures, outlays, and expenses incurred by the plaintiff in connection with said building since the said date have been and are at the sole cost of said plaintiff."

Plaintiff introduced evidence tending to show that, soon after it took possession of the building, it, at its own expense, made the decorations, furnished and installed the equipment mentioned in the complaint. The case was tried to a jury, who returned and rendered the following special verdict:

"(1) Was an asbestos curtain an essential part of the equipment of the theater? If so, what was its value at the time it was placed in the theater? Answer: Yes; $365.

"(2) Was a ticket office an essential part of the equipment of the theater? If so, what was its value at the time it was placed in the theater? Answer: Yes; $177.

"(3) Was a brass rail for the ticket office an essential part of the equipment of the theater? If so, what was its value at the time it was placed in the theater? Answer: Yes; ten dollars.

"(4) Were a gridiron and rigging loft essential parts of the equipment of the theater? If so, what was their value at the time they were placed in the theater? Answer: Yes; $788.

"(5) Were forty-eight chairs for theater boxes and stalls an essential part of the equipment of the theater? If so, what was their value at the time they were placed in the theater? Answer: Yes; no claim allowed.

"(6) Were decorations for the ceiling and wall an essential part of the equipment of the theater? If so, what was their value at the time they were placed in the theater? Answer: Yes; $2000."

From the judgment rendered on the verdict, the Clayton Company appeals.

McCARTY, C. J. (after stating the facts as above).

The first question presented by the appeal relates to the admission of evidence offered by the Vaudeville Company showing that the company was under contract and bond with a third party, which contract and bond provided for a forfeit to such party in case the company failed to open the theater in question on December 25, 1905. Counsel for appellant contend that this evidence was immaterial, as it in no way related to the contract, or to the alleged breach thereof, upon which this action is predicated, and was therefore prejudicial. It is evident that respondent pleaded the contract, bond, and forfeit it was under to a third party as matter of inducement only. Appellant, in its answer among other things, alleged that respondent, by entering into the possession of the building, thereby terminated "all prior negotiations, contracts, agreements, and obligations theretofore pending between" it and appellant. The evidence complained of tended to explain and elucidate the circumstances under which respondent accepted and went into possession of the building before it was as it contends, decorated and equipped as provided in the contract. We think the evidence was, under the circumstances, properly admitted.

The contract provided that respondent could not compel appellant to expend in erecting, completing, and equipping the building and entrance thereto more than $30,000. Appellant could, however, under the contract, expend more than $30,000 in erecting and equipping the building for use as a theater, but could not compel respondent to pay any portion of any expenditure it might make in excess of $30,000. Nor could it increase the rent of the building to respondent because of any additional expenditure. The evidence shows that it cost appellant from $50,000 to $70,000 to erect and put the building in the condition it was when respondent went into possession. It is contended that, since appellant expended more than $30,000 in erecting and equipping the building for use as a theater, and since "respondent received a building worth nearly twice as much as it had expected, or that appellant was obliged to build," respondent cannot, as matter of law, recover for any expenditure made by it in decorating or equipping the building for the uses for which it was intended. We think the provision of the contract limiting the amount that appellant was required to expend in erecting, completing, and equipping the building for use as a theater is plain and unambiguous. Under this provision of the contract, appellant, in order to limit the cost of the building and the equipment to $30,000, could have erected a much less elaborate structure than the one it did erect, and, as stated by counsel for respondent, it "could, to bring the cost of the theater down to the figures named, place in material and workmanship inferior to that which respondent might desire. It could . . . have decorated the theater in water colors rather than oil. It could (and did) furnish imitation rather than real leather chairs," etc. Appellant was, however, under the contract, bound to erect, complete, and equip a building suitable for the use for which it was intended. This assignment is without merit, and is therefore overruled.

The contract, in general terms, provided that appellant should "completely build and equip" a theater building "in accordance with plans and specifications to be prepared by

Architect C. M. Neuhausen, . . . which plans and specifications" were to be approved by respondent. Neither the contract nor the plans and specifications specified what should constitute the equipment of the theater building. It seems that the plans and specifications were prepared by the architect as the work in erecting the building progressed, and that a complete set of plans and specifications were never prepared by the architect. Witnesses who were shown to be skilled in reading plans testified that the plans prepared by the architect for the construction of this building indicated that decorations were intended. Respondent called several witnesses, all of whom were shown to be qualified to testify as to what constituted equipment for a theater building. These witnesses testified that the following items are an essential, in fact a necessary, part of the equipment of a building used as a theater: Asbestos curtain; ticket office; brass rail for ticket office; gridiron and rigging loft; chairs; and decorations for ceiling and walls. It is contended on behalf of appellant that the court erred in admitting this evidence. We do not think so. As the particular items constituting equipment for the theater building are not set forth in detail in the contract, nor indicated in the plans and specifications, it was proper for respondent to introduce evidence tending to show what items are usually and necessarily included in the equipment of a theater building.

It is also contended on behalf of appellant that, as the contract provided that the building should be completed and equipped "in accordance with the plans and specifications," and that since the plans and specifications do not provide for any of the items above mentioned, appellant was not legally bound to supply them. There would be much force to this contention if a complete set of plans and specifications had been prepared and submitted to and approved by respondent, and as approved had been followed by appellant in constructing and equipping the building. But that is not this case. As hereinbefore stated, the plans and specifications were prepared by the architect as the work

on the building progressed. It appears that the decorating and painting of the walls and ceiling, and putting in the fixtures and appliances mentioned, were the last things done and necessary to be done in preparing the building for the uses for which it was erected and for which it was intended. The failure of the architect to prepare complete plans and specifications of the building and the equipment cannot relieve appellant from its obligations as fixed by the contract.

The judgment is affirmed. Respondent to recover costs.

FRICK, J.

I concur with the Chief Justice. I feel constrained, however, to briefly state the principal reasons upon which I base my concurrence in the affirmance of the judgment. They are these:

The particular provision of the contract existing between the parties which is involved, and which, in my judgment, must control this decision, is as follows:

"The party of the first part (appellant) hereby agrees to completely build, erect, and equip, at the cost of the party of the first part, in accordance with plans and specifications to be prepared by Architect C. M. Neuhausen, at the expense of the party of the first part, which plans and specifications shall first be approved by the party of the second part, a theater building," etc. The theater building was erected by appellant; but it is contended by respondent that it was not completely equipped as provided in the contract. Appellant's answer to this contention is that it was required to build and equip a theater building only according to certain plans and specifications, and not otherwise. Further, that the plans and specifications as provided do not designate the things sued for by respondent as constituting a part of the equipment of the building. If the provision of the contract had been complied with by appellant in furnishing plans and specifications, its answer to respondent as indicated above might be decisive of the whole controversy. It conclusively appears, however, from the evidence that appellant failed to comply with the contract, in that it did not furnish

complete plans and specifications for the equipment of the theater building. While perhaps there is nothing said to that effect, yet, to my mind, it is quite clear that respondent waived or did not insist on that part of the contract; but it did not waive and has always insisted upon the part which required appellant to "completely build, erect, and equip" the theater building. This latter provision contemplated a building complete in itself, and one that was complete for use as a theater—a complete "show house," if you please. Appellant, in my judgment, cannot now shield itself, as it is attempting to do, behind its own negligence in not providing a complete set of plans and specifications from which it could be precisely determined by any one just what the character of the equipment spoken of in the contract should be. Appellant had agreed to completely equip; but it had failed to specify the character of the equipment, although I think it was its duty to furnish plans in which such was contained. Had it done so respondent then could have either approved or disapproved the equipment proposed in such plans. As the matter was left, respondent had no voice in the matter. The mere fact, therefore, that appellant failed to furnish such plans, in my judgment, cannot be availed of by it as an excuse for not completely equipping the building. Appellant having failed both in providing plans and equipping the building for use as a theater, respondent's only recourse was to establish, if it could, what constituted equipment of a theater building such as was erected by appellant. The fact that the character of the equipment may have been left in doubt is of no consequence since, if that was so, it was so because of appellant's fault in not furnishing the necessary plans and specifications in which the character of the equipment was specified. I think, therefore, that it cannot now invoke the rules which would govern in ordinary cases. If appellant agreed to equip the building, and decorations constituted a part of such equipment, and that it did so was found to be the case by the jury, it cannot now complain if it is required to pay for reasonable and fitting decorations for a theater building of the kind

which it erected as shown in this case. The evidence is conclusive, I think, that the decorations placed in the building by respondent were shown to be proper and reasonable in every respect, including cost. I can see no reason, therefore, why appellant should not be compelled to comply with all the terms of its contract, whether expressed or necessarily implied. The objections now urged by appellant, by reason of its conduct as above stated, have been stripped of their legal force and effect, and for that reason it now, by the verdict and judgment, is merely required to comply with the provisions of its own contract.

.STRAUP, J.

I dissent. A chief point of difference relates to decorations. By the respondent it is contended that under the contract the appellant was required to decorate the walls and ceiling of the building. Appellant disputed that, and further claimed that the contract in such particular was ambiguous. It made no decorations. The respondent, when it took possession of the building, at its own expense of $2000, decorated the walls and ceiling. The jury allowed it that sum for that purpose. The only provision of the contract which in any respect can be said to relate to or include decorations is: The appellant "agrees to completely build, erect, and equip, . . . in accordance with plans and specifications to be prepared by" a designated architect, and to be approved by respondent, "a theater building." To properly ascertain the terms of the contract requires a consideration of both the contract and the plans and specifications. They must be read and considered together. There is nothing in the contract itself concerning the subject of decorations, nor is there anything in the specifications; but on the plans are certain marks, mostly pen point dots, some short-curved, and some horizontal, lines of different shading, all made by the architect when the plans were drawn by him. These, the respondent contends, indicate decorations and the places where they were to be made on the walls and ceiling. The appellant contends they were only put on the drawings

to give them a finished appearance. That is all there is to
indicate that anything was agreed upon or stipulated con-
cerning decorations. The marks or scrolls do not, in or by
themselves, indicate or resemble anything. They can be said
to indicate a finished appearance of the drawings, or, treat-
ing them as symbolical, to represent anything, decorations,
trimmings, equipments, structures, or anything else one
might imagine could be put up at the places indicated by the
marks, or the character of the walls, or the material out of
which they were to be constructed, one thing at one place
and a wholly different thing at another. If treated as sym-
bols of decorations, there is nothing to indicate the descrip-
tion, character, or quality of them, whether to be in metal
work, plaster work, leather, tapestry, water colors, oil, or
what not. We thus have here a double ambiguity; one as
to what was meant and intended by the marks, and, if decora-
tions, then as to their character and quality. The respond-
ent was permitted, over appellant's objections, to resort to
parol evidence. I think it doubtful as to whether the con-
tract, though considered in connection with the plans, shows
that the parties agreed upon anything with respect to decora-
tions, or in any particular stipulated concerning such a sub-
ject. Though it be conceded it was competent by parol to
show what was meant and intended by the marks on the
plans, still the further questions are as to whether the prof-
fered and admitted evidence over the appellant's objections
was competent for that purpose, and, most of all, whether the
testimony when so adduced sufficiently aided the ambiguity
to ascertain with reasonable certainty what was meant and
intended by the parties respecting decorations as expressed
by their contract. These can best be considered by reference
to the questions propounded to the witnesses by the respond-
ent and the answers made by them, all of which were re-
ceived over the appellant's specific and timely objections. A
witness was called by the respondent, and, after showing
that he was "a practical architect of four years' experience,"
a graduate of a correspondence school, and that he had drawn
plans for and constructed as many as two theaters, one at

Salt Laks City, the other at Calgary, was shown the plans upon which the marks appeared. He had nothing whatever to do with preparing or drawing them, and was asked nothing respecting the architect who had prepared or drawn them, and nothing as to his acquaintance or association with him, nor as to his knowledge of the architect's method of indicating decorations on drawings, nor as to the method or manner decorations by architects are usually or generally indicated. Looking at the plans, the witness was asked: "Q. Referring to the upper portion of the proscenium arch or sounding board as you have described it, I will ask what the scroll-work upon that indicates. A. It indicates decorations. . . . I can't tell what kind of decorations from this plat. The scroll work upon the proscenium arch indicates decorations, I can't say what kind. The plans show decorations on the side of the proscenium arch, the sounding board, the arches above the boxes, the panels on the side of the auditorium, the ceiling in the balcony, and the front face of the balcony. I cannot determine from the plans what kind of decorations was intended. Q. From your experience as an architect, what kind of decorations might be placed upon the proscenium arch, the auditorium, the sounding board, and the boxes of the theater such as the Orpheum Theater in Salt Lake City? A. Decorations might consist of stucco work, plaster of paris cast, and relief work, could be in stamped model work, embossed paper, water colors, or oil relief work. Water color relief work done in stencil would be cheapest. Q. I will ask you whether or not, in your opinion as an architect, from the experience which you have had in building theaters, examination of theaters throughout the United States, if $2000 would be a reasonable price for decorating the interior of the Orpheum Theater in Salt Lake City in water colors? A. Yes; I do." This, as is seen, was not even based on any knowledge of the witness, nor upon any assumed hypothesis, as to the description, character, or quality of the decorations made by the respondent. Then, too, the whole question without such a

44 Utah 30

basis was tried, not to the court and jury, but to the witness.

A contractor of experience was also called and, being shown the plans, testified:

"I don't know what those marks about the proscenium arch indicate; they look like decorations. Q. I will ask you if those plans, or plans similar to those, were submitted to you as a building contractor in the regular course of your business, and you found upon the proscenium arch figures and lines and indications such as you find upon these, what, in your opinion, would they indicate? A. They would indicate some kind of decoration, I would not be able to tell what kind. Q. Where would you go to find out what kind of decorations were meant? A. I would go to the architect in charge of the work. . . . The decorations might be paint, water colors, plaster, or leather. . . . Q. In your opinion as a builder and architect, what kind of decorations would be indicated by these plans here? A. To decorate and to comply with this drawing, it might be done with water color, or oil paint, or plaster. Water color would be the cheapest. It would be impossible to tell from that [the plans] what it did mean. It could be stucco work, pressed paper, plaster of paris, or various other kinds." He further testified that the walls were not decorated by the appellant, and that the decorations were made by respondent. He was further asked: "Q. In the manner in which the theater was decorated, I will ask you whether or not you know that the way it was decorated was the cheapest or the most expensive, or what was the relative cost? A. It was decorated in about as cheap a way as it could be done. It was done in water color. Q. I will ask you whether or not, in your experience as a builder and contractor, and also from your experience and examination of other theaters throughout the United States, and your experience in regard to decorating buildings generally, whether or not the sum of $2000 was a reasonable sum for the decoration of the Orpheum Theater in Salt Lake City, Utah, in water colors? A. I think that was a reasonable sum."

Still another witness was called, who testified:

"I think I am competent to determine what are necessary equipments of a theater.   Q.   I will ask you whether or not, in your experience as a builder and contractor, and also from your experience in building the Orpheum Theater in Los Angeles and the one now being erected in Salt Lake, you are able to state whether or not decorations are a necessary part of the equipment of a theater which is to be built and to fully erect and equip?   A.   Yes."   Upon being shown the plans, he testified that they "show decorations around the proscenium arch and sounding board, over the boxes on either side and over the door;" but he, as the other witnesses, was unable to tell what kind of decorations was intended or meant.

These rulings are all complained of.   And the further complaint is made that the testimony so received did not help or cure the ambiguity.   Though it be conceded that parol evidence was admissible to explain the ambiguity, still I am clearly of the opinion that this testimony was improperly received.   I think it would have been competent to show by parol that the marks were used by the architect preparing and drawing the plans to indicate decorations, or that it was his habit or custom in preparing plans to so indicate decorations, or that in the trade or profession it was usual or customary for architects to so indicate decorations, or that the marks in the trade or profession had such a defined or understood meaning.   Had such evidence been adduced, then it might be inferred that the architect in preparing and drawing the plans had so regarded and used the marks, and hence that the parties so regarded and understood them.   But nothing of that kind was shown.   Here the witnesses were but called and shown the plans and asked what the marks indicate.   They replied, decorations of some sort.   As well could they have been permitted to say that the dots, the pen points, indicated "September Morn" in water color, the curved lines "Psyche at the Well" in tempera, and the scrolls "Cleopatra Meeting Antony" in oil.

And then I think it also clear that, by many of the questions propounded to them, the witnesses were required and

permitted to usurp the province of the court and jury by drawing conclusions of law and fact upon which the decision of the case with respect to the issue relating to decorations depended, and in most instances were allowed to give their opinion as to the cost of the decorations, without a showing that they had knowledge of, or without stating to them, the character and quality of the decorations made by the respondent. They but answered that the decorations as indicated on the plans, the description, character, or quality of which was intended neither of them could tell, would cost $2000. And for these reasons were the questions also objectionable.

But, after all this testimony was adduced, in what way did it help or cure the ambiguity? All the witnesses, testifying on the subject, but testified that the marks indicated some sort of decorations, but were unable to tell the description, character, or quality of them, or what decorations were intended or meant. With the aid of the testimony what more information had the court and jury as to the intent of the parties with respect to decorations as expressed by their contract? Being but informed that some sort of decorations was intended, but nothing to show the description, character, or quality of them, how can the contract in such particular be enforced, or how can it be told when it was performed in such respect and when not? I think, therefore, that the parol evidence in no way aided the ambiguity, and that the contract was as uncertain and indefinite after the evidence was received as before.

But the respondent further argues that it was entitled to an allowance for decorations under the clause of the contract "to completely build, erect, and equip" the theater, irrespective of plans or specifications, that decorations of some sort were a necessary part of its equipment, and that it was not "completely equipped" without them. The parties made no such contract. Its plain provisions are "to completely build, erect, and equip" the theater "in accordance with plans and specifications to be prepared by" a designated architect, and to be approved by the respondent.

So the parties did not, by their contract, merely stipulate that the appellant should "completely build, erect, and equip" a theater, but should so build one "in accordance with plans and specifications," etc. Hence must we, as the parties themselves stipulated, look to the plans and specifications to ascertain how the theater was required to be equipped. When we look to them we find nothing concerning decorations, unless the marks on the plans indicate decorations, which leads to the ambiguity. If they do not indicate decorations, then none are provided for; if they do, then is the stipulation in such respect, though considered with the testimony adduced by the respondent, so uncertain and ambiguous as to be incapable of performance or enforcement.

It further is argued that complete plans and specifications were not furnished by the appellant, and for that reason should the contract be considered independently of the clause that the theater was to be equipped in acordance with the plans and specifications. All I find to support the contention that complete plans and specifications were not furnished is this: The president of the respondent company upon the stand was asked: "Were any full, complete plans ever submitted to you, or how did you get them?" This was objected to as calling for a conclusion. The question was withdrawn. and the witness asked how many times he "saw different plans and specifications, that is, a piece here and there." He answered: "Well, the plans were gotten out just as the work proceeded. There never was a full set of plans. The plans were gotten out as the work proceeded for special work." Another witness for the respondent, the contractor, testified in response to questions asked by counsel for respondent: "Did he (the architect) as architect ever furnish you a complete set of plans and specifications?" He answered: "Well, he furnished a complete set before we got through, but not until we about got through;" that a complete set of plans and specifications were not furnished before the work commenced; "they came along as they were required . . . as a contractor there was a set of plans

furnished us, a blue print of them." But no claim was made that the plans and specifications as and when they were furnished were not approved by the respondent, or that it with respect to them made any objections, nor is it claimed by any one that the contract in such particular was in any manner modified or changed by any kind of an agreement, either express or implied. It was competent for the parties to modify or change their contract and build the theater without plans or specifications. But they did not do that. Further, the only claim made with respect to incompleteness of the plans and specifications relates to the subjects of an asbestos curtain, a gridiron, and a rigging loft, a brass rail, a ticket office, and a manager's office, and chairs. These, the respondent contends, should have been, but were not, indicated on the plans or specifications, because, as it asserts, they are necessary equipments of a completed theater. But on the record I do not find anything to show that the respondent objected to the plans or specifications because any of these things were not indicated on the plans or specifications. It did not try its case on any such theory. It tried it on the theory that those things are necessary equipments of a theater independently of the plans and specifications. That is, because, as it contends, they are such necessary equipments, it is entitled to recover for them, regardless of whether they were or were not indicated or provided for on the plans or specifications, or regardless of whether the plans or specifications furnished were approved or objected to by the respondent.

But no claim was or is made that the plans or specifications were incomplete with respect to decorations. Those, the respondent contends, are indicated on the plans by the marks and scrolls referred to. Of course it makes the further claim that it, under the clause of the contract referred to, was entitled to show that decorations were a necessary equipment of a completed theater, irrespective of the plans or specifications; but it made no claim that the plans in such respect were incomplete, or that it had not approved them, or that the contract requiring the theater to be

equipped in accordance with plans and specifications to be furnished by the architect and approved by the respondent was in any particular changed or modified. Both parties concede that the contract between them was and is to "completely build," etc., a theater "in accordance with plans and specifications" to be furnished by the architect and approved by the respondent. Complete plans were furnished, not before the work commenced, but as they were required. Under the plans and specifications which were furnished was the theater constructed. There is no dispute as to that. As to decorations the respondent contended that the plans as furnished provided for decorations; that the marks and scrolls indicated that, to show which it was permitted to resort to parol evidence. But now see how this matter was submitted to the jury for its special finding. The direction in such particular is: "Were the decorations for the ceiling and wall an essential part of the equipment of the theater? If, so, what was their value at the time they were placed in the theater?" The jury found: "Yes; $2000." The pertinent question in such respect was not: Were decorations "an essential part of the equipment of the theater?" for that was not the contract of the parties. Nor was the direction in such particular within the construction of the contract put upon it by the court in its instructions to the jury. The court, as to that, charged: "The court charges you that, if you find that the plans were not drawn for the purpose of showing or calling for any specific or ascertainable decoration and in this particular were drawn and constructed only for the purpose of showing where the decoration might be put if it were called for and specified, then the defendant was not under obligation to decorate the walls of the theater to any other or greater extent than they were decorated in accordance with the directions shown upon said plans."

The pertinent question was: Were decorations, as an equipment or otherwise, indicated or provided for on the plans and specifications, and, if so, what were the character and quality of them and the reasonable cost of making them? Notwithstanding the respondent, to support its contention,

adduced much evidence to show that the plans did indicate and did provide for decorations, the appellant to the contrary, yet the matter of decorations was submitted to the jury for a special finding, independently of all this testimony, and not on the theory of whether the marks did indicate decorations, or whether the plans and specifications otherwise called for or provided for decorations, and, if so, the character and quality of them and the reasonable cost to make them, but on the theory of whether decorations were an essential part of the equipment of a theater irrespective of the plans and specifications, and independently of the evidence adduced in respect thereof, and directly contrary to the charge referred to. So we have a contract which, if it at all pertains to the subject of decorations, is, as to that, to say the least, ambiguous, to explain which the parties adduced much evidence. But, after the evidence was adduced, the matter was submitted and determined in utter disregard and independently of such evidence. I think that wrong, and that the allowance made for decorations cannot, on this record, be upheld, and that a new trial should be granted, unless the respondent remits the amount awarded for decorations.